UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Dawn Meucci,<br>    *Plaintiff*,<br>    *v.*<br>City of Hartford,<br>    *Defendant*. | Civil No. 3:11cv766 (JBA)<br><br>March 12, 2013 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On May 10, 2011 Plaintiff Dawn Meucci filed a Complaint [Doc. # 1] against her current employer, Defendant City of Hartford (the "City"), alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, (Count One), and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1), (Count Two), arising out of Defendant's decision to demote her, failure to promote her, and failure to accommodate her disability. Defendant moves [Doc. # 28] for summary judgment, arguing that Plaintiff has failed to state a prima facie case of disability discrimination based on any of Defendant's actions. For the following reasons, Defendant's motion for summary judgment is granted in part and denied in part.

I.    **Background**

   A.    **Plaintiff's Employment History**

In January 1992, Plaintiff began her employment with the City of Hartford in the Metro Hartford Information Services ("MHIS") department. (*See* Ex. 18 [Doc. # 30] to Meucci Dep.; Meucci Dep. [Doc. # 29] at 10.)  In 2004, she was promoted to Principal Administrative Analyst, a position that she continues to hold to this day. (*See* Meucci Dep. at 9.)  As a Principal Administrative Analyst, Plaintiff is responsible for, *inter alia*,

"tak[ing] the lead in developing procedures resulting in more effective departmental operations," "supervis[ing] in the on–going administration and operation of comprehensive city programs," supervising "a variety of advanced research projects and special studies of departmental and City programs and procedures," and "assist[ing] in the preparation and administration of departmental and program budgets." (*See* Job Description, [Doc. # 34-6] Ex. 6 to Pl.'s Loc. R. 56(a)(2) Stmt [Doc. # 35] at 1.)

In 2006, Eric L. Jackson[1] became the Chief Information Officer and the head of MHIS. (Meucci Dep. at 12.)  Sometime later, Plaintiff states that Mr. Jackson promised her a promotion to Administrative Operations Manager. (*See* Meucci Dep. at 76, 116.) The job description for Administrative Operations Manager states that a Master's degree is preferred for the position. (*See* Ex. 11 to Meucci Dep.)  While Plaintiff does not have a Master's degree, she is enrolled in a Master's degree program at Trinity College. (*See* Meucci Dep. at 82.)  Mr. Jackson never promoted Plaintiff to this position, but instead used money in the budget to hire Miriam Rodriguez as his executive assistant. (*See* Meucci Dep. at 66.)  In October 2008, Plaintiff spoke with Mr. Jackson regarding his delegation of her duties to non–union employees (*see* Cortez Aff. [Doc. # 34-4, Ex. 4 to Pl.'s 56(a)(2) Stmt), and stated she would fight for her position.[2] (*See id.*)  As a result of this statement, Mr. Jackson filed a hostile work environment complaint against her, and Plaintiff filed a complaint against Mr. Jackson alleging that she had been denied opportunity for advancement. (*See id.*)  Mr. Jackson eventually withdrew his complaint,

---

[1] Mr. Jackson died before this lawsuit was filed.

[2] In May 2009, Plaintiff's union filed a grievance against the City claiming that Mr. Jackson had improperly assigned Plaintiff's duties to Miriam Rodriguez, thereby reducing Plaintiff's workload. (*See* Ex. 19 to Meucci Dep.)  The union later reached a settlement with the City regarding these concerns. (*See* supra n.3.)

2

and the City's investigation of Plaintiff's complaint determined that it was unsubstantiated. (*See id.*)

As CIO, Mr. Jackson oversaw a reorganization of MHIS, which led to a change in the reporting duties of several employees. (*See id.* at 50.) As a result of this reorganization, Mr. Jackson excluded Plaintiff from senior staff meetings. (*See* Shipman Aff. at 19.) Plaintiff's duties included supervision of the department receptionist, Monique Rodriguez (*see* Meucci Dep. at 96), and when Monique Rodriguez was fired in November 2009, Mr. Jackson moved Plaintiff to the front desk and assigned her to take over the receptionist duties, which were not part of her job description (*see* Job Description), in addition to her other responsibilities. (*See* Shipman Dep. at 20.) Plaintiff grieved this transfer, and subsequently reached a settlement with the City that allowed her to return to her original location. (*See* Meucci Dep. at 104; Shipman Dep. at 20.)[3] As a part of this settlement, Plaintiff was transferred to the Business Systems group, where she reported to the head of that group rather than to Mr. Jackson (*see* Shipman Dep. at 20), and was assigned to a cubicle farther from Mr. Jackson's office (*see* Meucci Dep. at 43–47). When Stephen Shipman took over the role of CIO he transferred Plaintiff back to her original department, where she reported to him, and restored her to senior staff meetings. (*See* Shipman Dep. at 25–26.)

B.     **Plaintiff's Requests for Accommodations**

The Plaintiff was diagnosed with Multiple Sclerosis in 1989, and as result, she is required to use a wheelchair to move around her workplace. (*See* Ex. 17 to Meucci Dep. ¶¶ 12–13.) As early as December 2003, Plaintiff spoke to the former Chief Information

---

[3] This settlement was reached as a part of the grievance relating to the transfer of some of Plaintiff's work to Miriam Rodriguez, a non–union employee. (*See* Ex. 21 to Meucci Dep.)

Officer of MHIS, Michael Vasquenza, to request that a handicap ramp be installed over the eight steps leading down to her work area, so she could access her cubicle when the elevator was out of service.  (*See* Pl.'s Resp. to Def.'s Interrogs. [Doc. # 34-2], Ex. 2 to Pl.'s 56(a)(2) Stmt, at 6, 12; Meucci Dep. at 28–31.)  Plaintiff renewed this request in October 2006 when she was informed that in the event of an emergency if the elevators were inoperable, she would have to wait in a stairwell to be carried out by emergency personnel.  (*See* Pl.'s Resp. to Def.'s Interrogs. at 6; *see also* Meucci Dep. at 59–60.)  Currently, when the elevator is out of service, Plaintiff is permitted to work from home.  (Shipman Aff. ¶¶ 25–27.)  Sometime in 2011, Plaintiff was informed by MHIS employee Al Floyd that at the request of the Acting Chief Information Officer, Stephen Shipman, the City was looking into the cost of installing a handicap ramp in her work area.  (*See* Meucci Dep. at 40–41.)  Mr. Shipman and Mr. Floyd deny that they ever investigated the feasibility of installing this ramp.  (*See* Shipman Dep. [Doc. # 31] at 8–9.)  MHIS has responded to Plaintiff's other requests for accommodation, including rearranging her cubicle to make it large enough for her to maneuver her wheelchair in and out of it.  (*See id.* at 45–46.)

## II. Discussion[4]

Plaintiff alleges that Defendant discriminated against her in violation of the ADA and the CFEPA[5] in that it constructively demoted her by assigning receptionist duties to her, it failed to promote her to the position of Administrative Operations Manager, and it failed to accommodate her request for modifications to her work environment.[6]

---

[4] "Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

[5] At oral argument the parties agreed that Plaintiff's CFEPA claims are coextensive with her ADA claims and are governed by the same standard. *See Craine v. Trinity College*, 259 Conn. 625, 637 n.6 (2002) ("We look to federal law for guidance on interpreting state employment discrimination law and the analysis is the same under both." (citing *State v. Comm'n on Human Rights & Opportunities*, 211 Conn. 464, 469–70 (1989))).

[6] Defendant raises several additional arguments in its motion for summary judgment. First, Defendant argues that it is entitled to attorney's fees and that evidence of any remedial measures taken by Mr. Shipman is inadmissible pursuant to Federal Rule of Evidence 407. However, these issues are appropriately addressed in pre– or post–trial proceedings. Defendant also argues that Plaintiff may not recover punitive damages against a municipality under either the ADA or the CFEPA, which is correct. *See* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency, or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."); *Worthington v. City of New Haven*, No. 3:94-CV-00609(EBB), 1999 WL 958627, at *16 (D. Conn. Oct. 5,

Defendant argues that Plaintiff has failed to make out a prima facie case of discrimination in relation to any of its alleged conduct.

### A. Plaintiff's Alleged Demotion[7]

Disability discrimination claims are governed by the burden–shifting analysis established in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1998) ("In analyzing a discriminat[ion] claim under the ADA, we apply the burden–shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*."). To establish a prima facie case of disability discrimination under the ADA, Plaintiff must establish that: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was "otherwise qualified to perform the essential functions of her job with or without reasonable accommodation;" and (4) she suffered an adverse employment action as a result of her disability. *See Jacques v. DiMarzio*, 386 F.3d 192, 198 (2d Cir. 2004). Once Plaintiff has established a prima facie case, the burden shifts to Defendant to "articulate some legitimate, nondiscriminatory reason" for Plaintiff's alleged demotion. *McDonnell Douglas*, 411 U.S. at 802. Once such a reason has been established, the burden shifts back

---

1999) ("Although prevailing plaintiffs may obtain punitive damages against a private party for a violation of the ADA or Section 504, punitive damages may not be recovered against a government defendant in such suits." (internal citations omitted)); *see also Morello v. City of Norwich*, No. CV226010871, 2012 WL 1871589 (Conn. Super. Ct. May 3, 2012) (holding that punitive damages are not recoverable against municipal defendants under the CFEPA); *Drolett v. Town of East Windsor*, No. CV085003212S, 2010 WL 3039597 (Conn. Super. Ct. July 12, 2010) (same). Thus, Defendant's motion for summary judgment as to Plaintiff's claim for punitive damages is granted.

[7] Counsel for Plaintiff clarified at oral argument that Plaintiff's transfer to the Business Systems group is not at issue in this suit.

to Plaintiff to show that Defendant's proffered reason was a pretext for prohibited disability discrimination. *Id.* at 804.

Defendant does not dispute that Plaintiff has established the first three elements of her prima facie case. However, Defendant argues that Plaintiff's transfer to the reception area did not constitute an "adverse employment action." While Plaintiff's job title and salary did not change as a result of her transfer to the receptionist area, she was assigned additional duties outside of her job description, which had previously been performed by an employee that she had supervised. The Second Circuit has recognized that "a transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Galabya v. New York City Bd. Of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000). *Galabya* suggested that a plaintiff could show that a transfer constituted an adverse employment action with evidence that the transfer was to an assignment that was "materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement." *Id.* Applying this standard to the undisputed facts, the *Galabya* court found that a transfer from a special education, junior high school keyboarding class to a mainstream, high school keyboarding class did not constitute an adverse employment action.

However, the Second Circuit has found that a plaintiff suffered an adverse employment action when he was transferred to a less "elite" unit with fewer opportunities for career advancement. *See de la Cruz v. New York City Human Resources Admin. Dept. of Social Servs.*, 82 F.3d 16, 21 (1996). In *de la Cruz*, the plaintiff was transferred to the Foster Care Unit from the Adoption Unit without a change in rank or cut in pay. He alleged that the Foster Care Unit was perceived as a less prestigious unit and that it provided "little opportunity for professional growth." *Id.* Despite the defendant's claim

7

that the two units were equal in status, the Second Circuit recognized that based on these allegations "the transfer arguably altered the terms and conditions of [the plaintiff's] employment in a negative way." *Id.* Similarly, in *Rodriguez v. Bd. of Educ.*, 602 F.3d 362 (2d Cir. 1980), the Second Circuit found that the plaintiff suffered an adverse employment action when she presented evidence that her transfer constituted a "serious professional setback and stigma to her career," even though it did not "reduce her benefits, her seniority rights, or add any increased load to her work performance." *Id.* at 365. There, the plaintiff was transferred from the junior high school to the elementary school, but her background, including her doctoral dissertation and her twenty years of experience, had focused on junior–high–level art education, which would not be relevant in her new position. *See id.* at 364.

Unlike the plaintiffs in *de la Cruz* and *Rodriguez*, Plaintiff has evidence from which a jury could conclude that she suffered an adverse employment action as a result of her transfer. Plaintiff retained her salary, job title, and all of her job responsibilities when she was transferred to the reception area. (*See* Shipman Aff. ¶¶ 13–14.) The only change in her conditions of employment was a physical relocation and the addition of some residual duties from a departing employee. Plaintiff claims that these were duties of a person she had supervised, but offers nothing in the record that either of these changes would have been objectively perceived as materially "less prestigious" or that they would have curtailed her opportunities for career advancement, such that the transfer would have altered the terms of her employment in a negative way. Therefore, Plaintiff has not established that her transfer to the reception area was an "adverse employment action" under the ADA or the CFEPA, and thus fails to state a prima facie claim of disability

discrimination as a result of her transfer. Defendant's Motion for Summary Judgment is granted on Plaintiff's demotion claim.

### B.      Failure To Promote

To establish a prima facie case of failure to promote, Plaintiff must establish that she applied for a specific open position, for which she was qualified, "rather than merely asserting that on several occasions she [] generally requested promotion." *Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003). Defendant disputes that Plaintiff was qualified for the position of Administrative Operations Managers and that such position was available. Defendant's arguments that Plaintiff was not qualified for the position because she lacked a Master's degree is belied by the job description for Administrative Operations Manager, which states only that a Master's degree is preferred. (*See* Admin. Ops. Mgr Job Description [Doc. # 34-5], Ex. 5 to Pl.'s 56(a)(2) Stmt.) Furthermore, Plaintiff was pursuing her Master's degree at the time she would have discussed the position with Mr. Jackson (*see* Meucci Dep. at 82), and she had previously been hired as an "under–fill" to a position where she was in the process of securing the necessary qualifications for the job (*see* Shipman Aff. ¶ 10). As to Defendant's claims that the position of Administrative Operations Manager never existed in MHIS, and that it would be an undue hardship for the City to create such a position for Plaintiff now (*see* Shipman Aff. ¶¶ 17–18), Plaintiff admits that the position was never posted (*see* Meucci Dep. at 84), but argues that because Mr. Jackson promised her the position when he was CIO, it must have existed at some point.

Assuming Plaintiff could establish a prima facie case of disability discrimination on her failure to promote claim, Defendant would still be entitled to summary judgment because it has stated legitimate non–discriminatory reasons for its failure to promote her,

which Plaintiff has failed to rebut: 1) no Administrative Operations Manager position exists at MHIS and 2), under the hiring freeze and ongoing budgetary crisis, it would be unduly burdensome to create this position. Plaintiff offers no evidence that either reason is pretextual or untrue.[8] Therefore, Defendant's Motion for Summary Judgment is granted with respect to Plaintiff's failure to promote claim.

### C. Failure To Accommodate

Plaintiff claims that Defendant failed to provide reasonable accommodations in failing to install a handicap ramp in her workspace.[9] To establish a prima facie case of disability discrimination for failure to accommodate, Plaintiff must show (1) that she was a person with a disability within the meaning of the ADA; (2) Defendant had notice of her disability; (3) Plaintiff could perform the essential functions of the job with reasonable accommodation; and (4) Defendant refused to make such accommodation. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir 2000). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to show that the accommodation would result in undue hardship. *See id.*

---

[8] Moreover, because Plaintiff claims that it was Mr. Jackson who offered her the AOM position, there is a presumption that his subsequent decision not to finalize that promotion was not motivated by discriminatory animus. *See Grady v. Affiliated Cent. Inc.*, 130 F.3d 553, 560 (1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing occurred only a short time after the hiring."). Plaintiff has not offered evidence to overcome this presumption against discriminatory animus.

[9] Counsel for Plaintiff clarified at oral argument that Plaintiff's failure to accommodate claim related only to the failure to respond to her request for a handicap ramp and not Defendant's failure to install electronic doors in the workplace, which Plaintiff admits she never requested.

Defendant does not appear to dispute the first three elements of Plaintiff's prima facie case as it relates to Plaintiff's request for a handicap ramp,[10] and appears only to argue that it did provide a reasonable accommodation by permitting Plaintiff to work from home when the elevator was not operational. Although Defendant did accommodate Plaintiff by permitting her to work from home on days when the elevator was out of service, she renewed her request for a handicap ramp in 2006 out of her concern for her safety in a fire emergency while she was at work, when there would be no advance warning that the elevator would be unavailable. (*See* Pl.'s Resp. to Def.'s Interrogs. at 6.) Defendant has not offered evidence that it addressed this concern with Plaintiff, and has in fact admitted that it has made no inquiries whatsoever into the feasibility of installing a handicap ramp. (*See* Shipman Dep. at 8–9.) Thus, there remains a genuine question of material fact as to whether the Defendant's failure to provide Plaintiff with a ramp to her work area constituted a denial of a reasonable accommodation. Therefore Defendant's Motion for Summary Judgment is denied with respect to Plaintiff's failure to accommodate claim in relation to her request for a handicap ramp.

---

[10] Plaintiff has offered evidence that she requested a handicap ramp be installed on several occasions (*see* Pl.'s Resp. to Def.'s Interrogs. at 6, 12; Meucci Dep. at 40–41, 59–60), and despite Defendant's argument that her claims that she requested an accommodation are vague, there is sufficient evidence to permit a jury to find that she made a request for a handicap ramp.

### III.   Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment [Doc. # 28] is granted in part and denied in part.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 12th day of March, 2013.